# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WIL WATSON ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 13-5503** |
| **CLEAR CHANNEL BROADCASTING, INC.** | **SECTION I** |

## ORDER

Before the Court is a motion[1] filed by defendant to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs filed an opposition,[2] to which defendant filed a reply.[3] For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The amended complaint[4] alleges that plaintiffs, who are all African American, "are, or have recently been, employed by [defendant] as Account Executives (AEs) in the New Orleans market. The primary function of [an AE] is to sell and service advertising accounts for [defendant]'s radio advertisers."[5] Plaintiffs allege that in February 2009, the defendant's "management" employees, who are Caucasian, "redistributed accounts [and] promoted the account switch as 'revenue neutral', and announced that management's intent was to preserve the

---

[1] R. Doc. No. 39.
[2] R. Doc. No. 46.
[3] R. Doc. No. 51.
[4] On August 20, 2013, plaintiffs initiated the above-captioned matter with a complaint alleging race discrimination by defendant, the current and former employer of the seven plaintiffs. R. Doc. No. 1. Defendant filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, R. Doc. No. 4, but the Court dismissed the motion after plaintiffs filed an amended complaint, R. Doc. No. 38. Defendant filed the instant motion to dismiss with respect to the amended complaint. R. Doc. No. 39.
[5] R. Doc. No. 38, ¶ 4.

existing commission income for all AEs."[6] However, plaintiffs allege that accounts which they "had spent considerable time and money developing into significant and dependable advertisers were intentionally, and in a race-conscious way, or in the alternative, negligently, stripped away and assigned to Caucasian [AEs]."[7] Plaintiffs also contend that new advertising leads were assigned pursuant to a "best hands" policy,[8] which "acted so as to perpetuate race-mediated account assignments" from 2009 to 2013.[9]

The alleged "result of the continuing redistribution of accounts, whether intentional or negligent, [was that] African-American [AEs] were disparately, and negatively, impacted, to their severe economic detriment as compared to their Caucasian counterparts."[10] Plaintiffs were allegedly left "[w]ith no significant [advertising] agency or statewide accounts coming to them from 2009 to the present," which "forced [plaintiffs] to scout out new business, in a recession, and among a disproportionately large number of disadvantaged, minority advertisers."[11] Plaintiffs allege that "African-American [AEs] lost on average more than 40% of their 2008 income in 2008-09," whereas "Caucasian [AEs] lost no more [than] about 15% of their 2008 income, on average, during the same period of time."[12]

---

[6] R. Doc. No. 38, ¶ 6.

[7] R. Doc. No. 38, ¶ 7.

[8] The complaint describes the "best hands" policy as meaning "that, if an account representative was already doing a particular type of business, he or she would continue to be given those types of leads." R. Doc. No. 38, ¶ 9. Plaintiffs contend, "Since the Caucasian [AEs] were already disparately benefitting from the reassignments that began in 2009, Defendant's Caucasian [AEs] appeared to be the best overall performers, and the 'Best Hands' policy exacerbated the disparity." R. Doc. No. 46, at 3.

[9] R. Doc. No. 38, ¶ 9.

[10] R. Doc. No. 38, ¶ 7.

[11] R. Doc. No. 38, ¶ 11.

[12] R. Doc. No. 38, ¶ 7. Plaintiffs allege that they earned salary and commissions ranging from $52,000 to $205,000 in 2008, R. Doc. No. 38, ¶ 5, but that their earnings dropped to a range of $22,000 to $146,000 in 2010, R. Doc. No. 38, ¶ 7.

Plaintiffs allege that "[w]ithin a month" of the February 2009 meeting in which accounts were reassigned, plaintiffs began complaining to several members of defendant's management "that success in the New Orleans market was not based on AE efforts but was more often based on differential and racially mediated account tools, account lists, and equipment" which were all provided in a racially discriminatory manner.[13] "On October 12, 2010, plaintiffs filed separate charges of discrimination with the Equal Employment Opportunity Commission ["EEOC"] which charged [defendant] with engaging in practices which disparately impacted African-American AEs working in the New Orleans market."[14] The EEOC issued right-to-sue letters on August 14, 2013.[15]

Defendant filed its motion to dismiss with respect to four categories of plaintiffs' claims: (1) all of plaintiffs' claims for disparate impact discrimination pursuant to 42 U.S.C. § 2000e-2(k)(1)(A)(i); (2) plaintiffs' Title VII claims arising prior to December 16, 2009; (3) plaintiffs' state law claims arising prior to February 21, 2012; and (4) plaintiffs' claims pursuant to 42 U.S.C. § 1981 that arose prior to August 20, 2012.[16] Defendant also contends that plaintiffs failed to administratively exhaust certain claims.[17]

---

[13] R. Doc. No. 38, ¶ 14. The complaint also alleges a number of particular acts of discrimination to support this general assertion. R. Doc. No. 38, ¶ 14.
[14] R. Doc. No. 38, ¶ 16.
[15] R. Doc. No. 38, ¶ 16.
[16] R. Doc. No. 39, at 2.
[17] R. Doc. No. 39-1, at 21-22

## STANDARD OF LAW

### A.      Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction. Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (holding that where there are grounds for dismissal under Rule 12(b)(1) for lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim on which relief can be granted, the "court should dismiss only on the jurisdictional ground . . . without reaching the question of failure to state a claim")). This approach "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id.* at 161. Where dismissal under Rule 12(b)(1) is appropriate, the plaintiff is not precluded from seeking relief in another forum with proper jurisdiction because no determination on the merits has been made. *See Hitt*, 561 F.2d at 608.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Where, as here, the defendant has attacked the court's subject matter jurisdiction, the plaintiff has the burden of "proving by a preponderance of the evidence that the

4

trial court" possesses the requisite jurisdiction. *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

**B.      Rule 12(b)(6)**

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). As the U.S. Court of Appeals for the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

**DISCUSSION**

**A.      Exhaustion of Administrative Remedies**

The Court first addresses defendant's argument that the Court lacks subject matter jurisdiction.[18] *See Ramming*, 281 F.3d at 161. Defendant argues that plaintiffs did not exhaust their administrative remedies regarding any alleged discrimination that occurred prior to November 20, 2009, which is designated as the earliest date that discrimination took place in each of plaintiffs' EEOC charges.[19] According to defendant, any conduct that occurred before that date was therefore "explicitly excluded from the charge."[20]

Defendant is correct that each of plaintiffs' EEOC charges, in the box labeled "Date(s) Discrimination Took Place," lists "11-20-2009" as the "Earliest" date of discrimination.[21] Plaintiffs offer no explanation of the significance of this date or how it was chosen, either in the EEOC charge itself or in their opposition.[22] However, the factual allegations in the EEOC charge give examples of discriminatory "compensation policies, practices and procedures" that allegedly resulted in a race-based income disparity of "over $20,000" in 2009.[23]

"[F]ailure to exhaust administrative remedies [with the EEOC] requires dismissal of the complaint for lack of jurisdiction." *Atkins v. Kempthorne*, 353 F. App'x 934, 936 (5th Cir. 2009); *see also Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 475 (5th Cir. 1997). "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dep't of Criminal Justice*,

---

[18]  Defendant's motion only raises a jurisdictional challenge pursuant to Rule 12(b)(1) with respect to the exhaustion issue. All of defendant's other arguments are pursuant to Rule 12(b)(6).
[19]  *See* R. Doc. No. 39-1, at 21-22; R. Doc. No. 6-2.
[20]  R. Doc. No. 51, at 9.
[21]  R. Doc. No. 6-2, at 2, 4, 6, 8, 10, 12, 14.
[22]  *See* R. Doc. No. 46, at 18-19.
[23]  R. Doc. No. 6-2, at 2.

220 F.3d 389, 395 (5th Cir. 2000). This Court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). "The crucial element of a charge of discrimination is the factual statement contained therein." *Clayton v. Rumsfeld*, 106 F. App'x 268, 271 (5th Cir. 2004) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)). "Everything else entered on the form is, in essence, a mere amplification of the factual allegations." *Sanchez*, 431 F.2d at 462; *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (describing the "dates of discriminatory acts specified within the charge" as one of several factors that courts should examine when "determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge").

Defendant cites *Johnson v. JE Merit Constructors, Inc.*, No. 05-908, 2007 U.S. Dist. LEXIS 98055 (M.D. La. Sept. 26, 2007),[24] for the proposition that "the Charges were unambiguously constrained to decisions made on or after November 20, 2009."[25] In *Johnson*, the plaintiff filed a complaint alleging a number of discriminatory acts that spanned a time period of several years. *See id.* at *2-4. The plaintiff filed an EEOC charge which "alleged that the dates the discrimination took place were from November 24, 2003 to April 16, 2004." *Id.* at *27. The plaintiff also alleged discrimination in his complaint regarding an August 2003 incident that was "not part of his EEOC charge."[26] *Id.* at *26. The court found that the August 2003 "was prior to

---

[24] *Johnson* was the report and recommendation of a U.S. Magistrate Judge which was adopted without objection by the district court. *See Johnson v. JE Merit Constructors, Inc.*, No. 05-908, 2007 U.S. Dist. LEXIS 86425 (M.D. La. Nov. 20, 2007).

[25] R. Doc. No. 39-1, at 22.

[26] There is no indication that the plaintiff alleged in the EEOC charge that there were any discriminatory policies, practices, or procedures that had a discriminatory effect over an

the time period specified in the charge and would not have been within the scope of the EEOC investigation that could reasonably be expected to grow out of the charge of discrimination." *Id.* at *27.

Other courts have also given substantial or determinative weight to dates listed on the EEOC charge in the appropriate circumstances. *See Patt v. Sweetheart Cup*, No. 02-10057, 2002 WL 1939863, at *1 (5th Cir. 2002) (finding that, regarding "incidents that were not complained of in his EEOC charge," and "[g]iven that [plaintiff] alleged in the EEOC charge that the earliest date of discrimination occurred . . . two days before he was discharged[,] . . . he is not permitted to complain of persistent discrimination that existed throughout his employment"); *Torczyner v. Lockheed Missiles & Space Co.*, No. 95-17121, 1996 WL 673829, at *2 (9th Cir. Nov. 20, 1996) ("[Plaintiff] has failed to present, and the Court is unaware of, any legal authority to support the proposition that the date sworn to by a complainant as the date of discrimination should not be considered as such."); *Hananiya v. City of Memphis*, 356 F. Supp. 2d 871, 875 (W.D. Tenn. 2005) (determining, without analysis, that "Plaintiff is prohibited from premising her claims . . . on any discrete acts occurring prior to January 5, 2000—the earliest date the alleged discrimination took place according to the second EEOC Charge").

In other circumstances, however, courts have looked beyond the dates listed on the EEOC charge. For example, in *Marshak v. Sierra Vista Unified Schs.*, No. 95-15795, 1996 WL 560220 (9th Cir. Sept. 30, 1996), the plaintiff "failed to include his wrongful-demotion claim" in the EEOC charge and stated in the charge "that the earliest date on which discrimination took place was . . . nearly three months" after the date of his alleged wrongful demotion. *Id.* at *2. Despite the fact that the incident fell outside the dates listed on the EEOC charge, the U.S. Court

---

extended period of time. *See id.* at *25-28; *but cf.* R. Doc. No. 6-2, at 2 (alleging discriminatory "compensation policies, practices and procedures").

of Appeals for the Ninth Circuit "[c]onstru[ed] Marshak's charge liberally [and] conclude[d] that it is reasonably likely that the EEOC's investigation . . . would have covered his demotion." *Id.*; *see also Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, at 626 (E.D. Va. Jan. 4, 2011) ("[I]ncidents now described in the Plaintiff's Complaint in this Court, and yet pre-dating the . . . 'earliest' date described in the earlier EEOC Charge, are not barred from consideration by this Court merely because the Plaintiff listed a date of earliest discrimination . . . that was later than the alleged acts of discrimination described in her . . . Complaint beginning this suit."); *Greene v. Term City, Inc.*, 828 F. Supp. 854, 587-88 (N.D. Ill. 1993) ("[Where a] series of offensive sexually oriented remarks is the basis for the plaintiff's hostile work environment claim . . . this court may reasonably infer that the plaintiff did not mean to list '9/10/91' as the earliest date on which discrimination took place.").

These cases illustrate why the Court must engage in a "fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 789. Common to all these cases, however, is the principle that "[t]he crucial element of a charge of discrimination is the factual statement contained therein." *Clayton*, 106 F. App'x at 271. The most important consideration is "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas*, 220 F.3d at 395.

The Court finds that "the scope of the EEOC investigation which can *reasonably* be expected to grow out of the charge" is not limited by plaintiffs' apparently arbitrary selection of a date for the purposes of one box on the charge form. *See Thomas*, 220 F.3d at 395 (emphasis added). An investigation into alleged discriminatory "compensation policies, practices and procedures" would reasonably be expected to include the motivations behind and origin of such

policies. Furthermore, the alleged pay disparity occurred "in 2009," implying that the alleged discrimination occurred over the course of the entire 2009 calendar year.[27]

Looking "slightly beyond [the charge's] four corners, to its substance rather than its label," the Court finds that the EEOC investigation would not be reasonably limited by the "11-20-2009" date, but that such investigation would encompass all of the allegedly discriminatory activity that occurred pursuant to the "compensation policies, practices and procedures" during the calendar year of 2009. *See Pacheco*, 448 F.3d at 789. Defendant does not argue that plaintiffs have failed to exhaust their administrative remedies with respect to any other claims.[28] Accordingly, the Court need not dismiss any portion of the complaint for lack of jurisdiction.[29] *See Atkins*, 353 F. App'x at 936.

### B.    Disparate Impact Claims

Defendant argues that plaintiffs' disparate impact claims must be dismissed because "[c]omplaints that fail to sufficiently identify a facially-neutral policy are subject to dismissal under Rule 12(b)."[30] Defendant acknowledges that the amended complaint alleges defendant "promoted the account switch [from the February 2009 meeting] as 'revenue neutral', and announced that management's intent was to preserve the existing commission income for all AEs. The scheme was therefore facially neutral."[31] However, defendant characterizes that portion of the amended complaint as "a futile effort to transmogrify their disparate-treatment

---

[27] R. Doc. No. 6-2, at 2.
[28] *See* R. Doc. No. 39-1, at 21-22.
[29] This order does not comment on any other jurisdictional defect yet to be raised by the parties or discovered by the Court. Rather, this order simply rejects defendant's argument that the Court lacks subject matter jurisdiction based on a failure to exhaust administrative remedies for claims arising prior to November 20, 2009.
[30] R. Doc. No. 39-1, at 7.
[31] R. Doc. No. 38, ¶ 6.

claims into disparate-impact claims,"[32] and defendant argues that "while Plaintiffs use the words 'disparate impact,' it is clear that the specific complaints they make are not of disparate impact, but rather disparate treatment."[33] Defendant points out that other portions of the amended complaint contain allegations of intentional discrimination which tend to contradict a disparate impact theory.[34] Defendant concludes, "Because Plaintiffs fail to plead a specific, facially-neutral practice or policy and how that specific practice or policy had a disparate impact on African Americans, their disparate-impact claims under 42 U.S.C. § 2000e-2(k)(1)(A)(i) should be dismissed at this point."[35]

In order to make a prima facie case of disparate impact, "[a] disparate-impact plaintiff must show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class. Furthermore, proof of discriminatory motive is not required for disparate-impact claims." *Pacheco*, 448 F.3d at 791 (citations omitted) (citing *Hebert v. Monsanto Co.*, 682 F.2d 1111, 1116 (5th Cir. 1982)).

Plaintiffs allege that they were told by defendant that the account reassignments would be "revenue neutral" and "that management's intent was to preserve the existing commission income for all AEs,"[36] but that "African-American [AEs] were disparately, and negatively, impacted, to their severe economic detriment" in the form of a significant loss of income.[37] Accepting these "well-pleaded facts as true and liberally constru[ing] all factual allegations in

---

[32] "Title VII creates a federal cause of action for two largely separate theories of discrimination, disparate treatment and disparate impact." *Pacheco*, 448 F.3d at 787.
[33] R. Doc. No. 39-1, at 9.
[34] R. Doc. No. 39-1, at 9-10 (citing R. Doc. No. 38, ¶ 14).
[35] R. Doc. No. 39-1, at 10.
[36] R. Doc. No. 38, ¶ 6.
[37] R. Doc. No. 38, ¶ 7.

the light most favorable to the plaintiff," the Court finds that plaintiffs have adequately alleged a disparate impact claim. *See Spivey*, 197 F.3d at 774.

Furthermore, the amended complaint's alternative allegations of disparate treatment do not render insufficient the disparate impact allegations. "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). It is irrelevant at this stage whether both disparate impact and disparate treatment claims could be proven at trial because the amended complaint and its factual allegations need only "raise a right to relief above the speculative level." *See Gonzalez*, 577 F.3d at 603. "[P]laintiffs are certainly allowed to plead in the alternative and the court cannot say at this juncture that plaintiffs can prove no set of facts that would entitle them to relief under a disparate impact theory." *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200, 2005 WL 1801605, at *2 (D. Kan. July 29, 2005). Accordingly, defendant's argument that plaintiffs' disparate impact claims should be dismissed pursuant to Rule 12(b)(6) is rejected.

## C.     Timeliness

Defendant next argues that many of plaintiffs' claims are untimely under the relevant limitations periods. The Court addresses each type of challenged claim in turn.

### 1.     *Title VII Claims*

The parties agree, and the law is clear, that an employee must file a charge with the EEOC within 300 days of the occurrence of the alleged unlawful employment practice.[38] 42 U.S.C. § 2000e-5(e)(1); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998). Generally, each discrete discriminatory act must have occurred within the 300 days prior to the filing of the charge. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Plaintiffs filed their

---

[38] R. Doc. No. 39-1, at 11; R. Doc. No. 46, at 11.

EEOC charges on October 12, 2010.[39] Accordingly, only those discrete acts that occurred on or after December 16, 2009, fall within the 300-day period.

Recognizing that the February 2009 meeting and redistribution of accounts occurred outside this 300-day window, plaintiffs do not characterize the allegations in the complaint as discrete acts.[40] Plaintiffs note that "[i]n cases covered by the Ledbetter Fair Pay Act ("FPA") or in cases of continuing violations, . . . the statute of limitations resets with each successive violation."[41] For the following reasons, the Court finds that neither the FPA nor the continuing violations doctrine applies to plaintiffs' Title VII claims, and that all such claims relating to events before December 16, 2009, must be dismissed.

a.      FPA

The FPA, Pub. L. No. 111-2, which amended 42 U.S.C. § 2000e-5, provides:

> [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, [1] when a discriminatory compensation decision or other practice is adopted, [2] when an individual becomes subject to a discriminatory compensation decision or other practice, or [3] when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A). The FPA specifically overturned the U.S. Supreme Court's decision in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), which "unduly restrict[ed] the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices." Pub. L. No. 111-2, § 2(1).

---

[39] *See* R. Doc. No. 6-2, at 2.
[40] It should also be noted that two of the seven plaintiffs did not check the box indicating that the alleged discrimination is a "Continuing Action." *See* R. Doc. No. 6-2, at 12, 14. Defendant apparently does not ascribe any significance to this discrepancy.
[41] R. Doc. No. 46, at 11-12.

Justice Ginsberg's dissent in *Ledbetter* outlines key attributes that distinguish wage discrimination claims from other types of unlawful employment practices. Justice Ginsburg noted that "discrimination with respect to compensation . . . does not fit within the category of singular discrete acts" that are "easy to identify." 550 U.S. at 649 (Ginsburg, J., dissenting). "A worker knows immediately if she is denied a promotion or transfer, if she is fired or refused employment. And promotions, transfers, hirings, and firings are generally public events, known to co-workers." *Id.* at 649. However, "[p]ay disparities often occur . . . in small increments; cause to suspect that discrimination is at work develops only over time." *Id.* at 645.

The Fifth Circuit has held that the FPA does not apply to discrete acts, *Tillman v. Southern Wood Preserving of Hattiesberg, Inc.*, 377 F. App'x 346, 350 n.2 (5th Cir. 2009) (refusing to apply the FPA to such discrete acts as a reprimand, a pay-raise exclusion, and denials of weekend overtime), as has another section of this Court, *Moore v. Napolitano*, No. 07-2666, 2009 WL 4723169, at *10 n.6 (E.D. La. Dec. 3, 2009) (Vance, J.) ("The Fair Pay Act was intended to return the law to its state immediately prior to [the *Ledbetter* decision]. The Fair Pay Act thus did not disturb [*Morgan*], which held that a plaintiff may not file an administrative charge with respect to discrete acts . . . that did not occur within the appropriate limitations period, even when they are related to timely filed charges."); *see also Noel v. The Boeing Co.*, 622 F.3d 266, 274 (3d Cir. 2010) ("There is no indication, however, that Congress intended the FPA to apply to discrete employment decisions . . . ."); *Harris v. Auxilium Pharm., Inc.*, 664 F. Supp. 2d 711, 747 (S.D. Tex. 2009) ("[The FPA]'s wording does not indicate that it meant to extend the statute of limitations for claims based on the 'discrete acts' identified in *Morgan*."), *cited with approval in Tillman*, 377 F. App'x at 350 n.2.

The U.S. Supreme Court "has defined 'discrete acts' as easily identifiable incidents, including termination, failure to promote, denial of transfer, and refusal to hire." *Tillman*, 377 F. App'x at 349 (citing *Morgan*, 536 U.S. at 114). "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Morgan*, 536 U.S. at 112. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

In *Wayne v. Dallas Morning News*, 78 F. Supp. 2d 571 (N.D. Tex. 1999), the plaintiff was an advertising "Account Executive" who specialized in selling advertising space to restaurants. *Id.* at 571, 574-75. The plaintiff alleged, among other things, that her employer "discriminated against her on account of her race by assigning higher revenue generating restaurant accounts to white sales representatives." *Id.* at 575. In discussing the timeliness of the plaintiff's Title VII claims in the context of the continuing violations doctrine, the court compared the account assignments to demotion and failure-to-promote claims, and it found that such assignments were discrete events, "not day-to-day occurrences which formed a continuing and related pattern of conduct." *Id.* at 582.

Plaintiffs allege that "[w]ithin a month" of the February 2009 meeting in which their accounts were reassigned in an allegedly discriminatory way, they "began complaining" to defendant's management.[42] The amended complaint does not allege that "cause to suspect that discrimination [was] at work develop[ed] only over time." *See Ledbetter*, 550 U.S. at 645. Rather, like "promotions, transfers, hirings, and firings," the allegedly discriminatory account reassignments were "public events, known to co-workers." *See id.* at 649. Plaintiffs allege that

---

[42] R. Doc. No. 38, ¶ 14.

they were aware of the basis for their race discrimination claims no later than March 2009, one month after the meeting at which their accounts were reassigned.[43] As in *Wayne*, plaintiffs' allegations of racially motivated account assignments in the amended complaint constitute "discrete events." *See Wayne*, 78 F. Supp. 2d at 582.

Plaintiffs should have filed an EEOC charge within 300 days of becoming aware of the basis for their claims. Instead, plaintiffs waited to file their EEOC charges until October 12, 2010, approximately twenty months after the February 2009 meeting.[44] Even though some account reassignments may have occurred after the December 16, 2009 limitations date, those "discrete acts that fall within the statutory time period do not make timely acts [i.e., account reassignments] that fall outside the time period." *See Morgan*, 536 U.S. at 112. Accordingly, the FPA does not render timely any of plaintiffs' Title VII claims relative to acts which occurred before December 16, 2009.

b.      Continuing Violations Doctrine

"The continuing violation theory provides that where the last act alleged is part of an ongoing pattern of discrimination and occurs within the filing period, allegations concerning earlier acts are not time-barred." *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 865 (5th Cir. 1993) (internal quotation marks omitted). The Fifth Circuit "has stated that a plaintiff may not rely on the continuing violations doctrine 'to resurrect claims about discrimination concluded in the past, even though its effects persist.'" *Mack v. John L. Wortham & Son, L.P.*, No. 12-20798, 2013 WL 4758052, at *6 (5th Cir. Sept. 5, 2013) (quoting *Berry v. Bd. of Supervisors of L.S.U.*, 715 F.2d 971, 979 (5th Cir. 1983)). As explained in *Berry*, there are three particularly relevant factors that the Court must examine:

---

[43] R. Doc. No. 38, ¶ 14.
[44] R. Doc. No. 38, ¶¶ 14, 16.

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.*, a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

715 F.2d at 981. These questions are non-exhaustive, and the inquiry is a fact-specific one, *id.* at 981-82, but "[t]he Fifth Circuit has emphasized that the third factor is 'perhaps of most importance,'" *Culotta v. Sodexo Remote Sites P'ship*, 864 F. Supp. 2d 466, 471-72 (E.D. La. 2012) (Africk, J.); *see also Safford v. St. Tammany Parish Fire Prot. Dist. No. 1*, No. 02-55, 2004 WL 32921, at *5-6 (E.D. La. Jan. 5, 2004) (Vance, J.) (considering only the third factor in determining whether alleged discriminatory acts constituted a continuing violation). Plaintiffs "must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, *rather than any discrete occurrence*, that gives rise to the cause of action." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) (emphasis added) (citations omitted).

As discussed above, the amended complaint alleges discrete discriminatory acts. Each account reassignment had a "degree of permanence" which should have, and actually did,[45] trigger plaintiffs' awareness of and duty to assert their rights. *See Berry*, 715 F.2d at 981; *Wayne*, 78 F. Supp. 2d at 582. As alleged in the amended complaint, plaintiffs were aware of the allegedly discriminatory actions "[w]ithin a month" of the February 2009 meeting and have been complaining to defendant from "2009 through to the present."[46] Such awareness triggered a duty to assert their rights. *See Berry*, 715 F.2d at 981. Accordingly, the continuing violations doctrine

---

[45] R. Doc. No. 38, ¶ 14.
[46] R. Doc. No. 38, ¶ 14.

does not apply and plaintiffs' Title VII claims that arose before December 16, 2009 are time-barred.

###### 2.     State Law Claims

Defendant argues that plaintiffs' claims pursuant to the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. § 23:301 *et seq.*, are untimely because they are subject to an 18 month prescriptive period.[47] The LEDL provides, "Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year." La. Rev. Stat. § 23:303(D). "[T]his one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission," but such suspension of the prescriptive period is limited to six months. *Id.* Accordingly, all of plaintiffs' LEDL claims that arose more than 18 months prior to the filing of the complaint are untimely. *See id.*; *Holliday v. Commonwealth Brands, Inc.*, No. 10-2785, 2012 WL 72468, at *2 (E.D. La. Jan. 10, 2012) (Zainey, J.).

The above-captioned litigation was filed on August 20, 2013.[48] Plaintiffs argue only that the continuing violations doctrine applies to render their claims timely because they "allege the discriminatory acts occurred over time, and were not easily apparent based on a single discrete act."[49] However, as discussed above, the continuing violations doctrine does not apply to the allegations in the amended complaint.[50] Accordingly, any of plaintiffs' LEDL claims that arose

---

[47] R. Doc. No. 39-1, at 20.

[48] *See* R. Doc. No. 1.

[49] R. Doc. No. 46, at 18 (citing *Bustamento v. Tucker*, 607 So. 2d 532, 540 (La. 1992)).

[50] The Louisiana Supreme Court in *Bustamento* examined and followed federal caselaw in discussing the continuing violations doctrine. *See Bustamento*, 607 So. 2d at 540-42. Furthermore, "[f]ederal courts look to Title VII jurisprudence to interpret the LEDL." *Harrell v. Orkin, LLC*, 876 F. Supp. 2d 695, 701 (E.D. La. 2012) (Africk, J.). Accordingly, the above discussion of the continuing violations doctrine also applies to plaintiffs' LEDL claims.

before February 20, 2012—more than 18 months before the original complaint was filed on August 20, 2013—are prescribed.

### 3.   Section 1981 Claims

Section 1981 claims are subject to a four-year limitations period.[51] 28 U.S.C. § 1658; *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). As discussed above, the FPA and the continuing violations doctrine do not apply to plaintiffs' claims. Accordingly, any claims arising more than four years before the filing of the complaint—that is, before August 20, 2009—are outside the limitations period.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiffs' Title VII claims that arose before December 16, 2009, are **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiffs' state law claims pursuant to the LEDL that arose before February 20, 2012, are **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiffs' § 1981 claims that arose before August 20, 2009, are **DISMISSED**.

---

[51] Defendant's argument that a one-year limitations period should apply is without merit. *See* R. Doc. No. 39-1, at 20-21 (citing *Willis v. Cleco Corp.*, 927 F. Supp. 2d 372 (W.D. La. 2013)). *Willis* is readily distinguishable because plaintiffs do not allege any failure-to-promote claims. *See Willis* 927 F. Supp. 2d at 378.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss is **DENIED** in all other respects.

New Orleans, Louisiana, January 22, 2014.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**